UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2010 Grand Jury

SA CR 11-0076

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 11-_____ |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1341: Mail Fraud] |
| TUAN DUC TRAN, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[18 U.S.C. § 1341]

A.   Introductory Allegations

At all times relevant to this Indictment:

1.   The Medicare program was a federal health insurance program operated by the United States Department of Health and Human Services ("HHS").  Medicare provided insurance coverage for certain qualifying medical services for individuals age 65 years and older and certain disabled persons.  Medicare insurance benefits were paid out of a trust fund consisting of

appropriations from the United States Treasury and premiums paid by those persons who chose to enroll.

2.    The Centers for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HCFA"), was responsible for the administration of the Medicare program nationally.  CMS contracted with private insurance companies to process and pay Medicare claims regionally.  A private insurance company that processed Medicare's claims regionally was referred to as a "fiscal intermediary," or "FI."  The FI for the region that included Southern California was United Government Services, LLC in 2006 and 2007 and was National Government Services, Inc. in 2008.

3.    People who received Medicare insurance benefits were referred to as Medicare "beneficiaries."  Each Medicare beneficiary was assigned a unique Medicare identification number referred to as a beneficiary number.

4.    Health care providers who applied to Medicare for eligibility for reimbursement for medical services that they provided to Medicare beneficiaries were referred to as Medicare "providers."  Each Medicare provider was assigned a unique Medicare identification number referred to as a "provider number."

5.    Under Medicare rules, a Comprehensive Outpatient Rehabilitation Facility ("CORF") was a single location at which multi-disciplinary rehabilitation services were provided to Medicare beneficiaries in a coordinated fashion.  To be covered by Medicare, CORF services must have had the potential to restore or improve lost or impaired functions for an injured, ill, or

1  disabled beneficiary and such services must have been reasonable

2  and necessary to the diagnosis or treatment of an illness or

3  injury or to improve the function of a malformed body member.

4  Medicare required that a CORF provide at least physicians'

5  services, physical therapy ("PT"), and social or psychological

6  services.  A CORF could also provide respiratory therapy ("RT"),

7  as long as it was consistent with a plan of treatment, necessary

8  to achieve rehabilitation goals, and performed in conjunction

9  with the core CORF services described above.

10       6.   Medicare imposed a number of requirements on a CORF in

11  order for it to receive reimbursement from Medicare for

12  rehabilitation services provided to Medicare beneficiaries at the

13  CORF.  These requirements related to the medical condition of the

14  beneficiary, the CORF staff, and the operation of the CORF.  A

15  physician must have referred the beneficiary to the CORF,

16  certified that the beneficiary needed skilled rehabilitation

17  services, provided the beneficiary's medical history, current

18  medical findings, diagnosis, and rehabilitation goals to the

19  CORF, and given the CORF a statement of types of therapy that

20  would be inappropriate for a beneficiary (referred to as

21  "contraindications to any treatment modality") before treatment

22  began.  Prior to the commencement of treatment, a physician who

23  had recently evaluated the beneficiary, either the referrer or a

24  physician working at the CORF, or both in collaboration, must

25  have established a treatment plan for the beneficiary.  The

26  treatment plan had to be reviewed at least every 60 days by a

27  physician working at the CORF and the results of the review were

28  required to be communicated to the referring physician for

3

concurrence before treatment was continued or discontinued.  CORF
staff was required to include at least one licensed physician and
at least one licensed professional for each type of service
provided.  Unlicensed personnel could assist the professional
CORF staff only if the licensed personnel were on the premises,
instructed the unlicensed personnel, and retained responsibility
for their activities.  CORFs were required to maintain clinical
records for beneficiaries who were treated at the CORF and to do
so for at least five years after a beneficiary was discharged.
CORFs were also required to have sufficient space and equipment
to implement treatment plans and to meet safety and sanitary
standards.

　　　　7.　　If a CORF provided services to a beneficiary in
compliance with these requirements, it could submit a written or
electronic claim to Medicare for reimbursement for those
services.  The claim had to include the beneficiary's
identification information, the type of services provided, and
the name of the beneficiary's treating physician who had referred
the beneficiary to the CORF.  By submitting a claim to Medicare,
the CORF provider certified that the claim was in compliance with
Medicare's regulations and rules, including that the
beneficiary's treating physician had referred the beneficiary to
the CORF for rehabilitation services that were medically
necessary.  Medicare reimbursed a provider either by mailing a
check or by making an electronic deposit of funds directly to the
provider's bank account.

/ / /

/ / /

4

1       8.   Fountain Valley Healthcare Center ("FVHC") was a CORF

2 located at 10900 Warner Avenue, Suite 101B, Fountain Valley,

3 California 92708.

4       9.  Defendant TUAN DUC TRAN ("TRAN") owned and operated

5 FVHC and was its chief executive officer.  Defendant TRAN applied

6 to Medicare on behalf of FVHC for FVHC to become a Medicare

7 provider.  FVHC was given a Medicare provider number in or around

8 October 2001.  Defendant TRAN caused claims to be transmitted

9 electronically to Medicare through a billing company with whom

10 FVHC contracted to submit bills.  Defendant TRAN prepared, and

11 caused other individuals he employed to prepare, documents

12 referred to as "superbills," each of which listed the

13 rehabilitation services that defendant TRAN claimed that FVHC

14 provided to particular Medicare beneficiaries during a particular

15 month.  Defendant TRAN then gave these superbills to the billing

16 company who, at defendant TRAN's direction, transmitted the

17 information contained in the superbills to Medicare for

18 reimbursement.  Medicare reimbursed defendant TRAN by sending

19 checks for payment to FVHC via United States mail.

20    10.  Defendant TRAN caused FVHC to violate Medicare's

21 regulations and rules for reimbursement for CORF services in

22 numerous respects, including, but not limited to, the following:

23 (1) the treating physicians of beneficiaries for whom Medicare

24 claims were submitted by FVHC did not refer the beneficiaries to

25 FVHC for rehabilitation services, (2) no medical history,

26 findings, diagnoses, or contraindications to any treatment

27 modality were obtained by FVHC from many beneficiaries' treating

28 physicians, (3) many beneficiaries did not have a medical need

1   for the services at FVHC, (4) the results of a review of many

2   beneficiaries' treatment plans at FVHC were not communicated to

3   their treating physicians after 60 days of treatment, (5) the

4   concurrence of many beneficiaries' treating physicians was not

5   obtained before continuing treatment of the beneficiaries at FVHC

6   after 60 days, and (6) the claims included RT services that were

7   performed at FVHC by an unlicensed staff member who was not

8   supervised by a licensed respiratory therapist.

9   B.   The Fraudulent Scheme

10       11.   Beginning in or around May 2003, or earlier, and

11  continuing through January 2008, in Orange County, within the

12  Central District of California, and elsewhere, defendant TRAN

13  knowingly and with intent to defraud, devised, participated in,

14  and executed a scheme to defraud Medicare as to material matters,

15  and to obtain money and property from Medicare by means of

16  material false and fraudulent pretenses, representations, and

17  promises, and the concealment of material facts.

18  C.   Means To Accomplish The Fraudulent Scheme

19       12.   In carrying out the fraudulent scheme, defendant TRAN

20  engaged in and caused others to engage in fraudulent and

21  deceptive acts, practices, and devices including, but not limited

22  to, the following:

23            a.   Defendant TRAN created and caused to be created

24  documents, including superbills, that stated that

25  (1) beneficiaries' treating physicians had referred the

26  beneficiaries to FVHC for rehabilitation services when, in

27  reality, the treating physicians had not made such referrals and

28  (2) some beneficiaries were referred to FVHC by physicians for

rehabilitation services when, in reality, those physicians were
not even treating the corresponding beneficiaries.

      b.   Defendant TRAN provided and caused to be provided
to a billing contractor superbills that contained false
statements as described above and directed the contractor to
submit claims that included those false statements to Medicare
for reimbursement of FVHC for CORF services.

     13.  At the time defendant TRAN made the false statements
and caused them to be made, concealed and omitted material
information and caused such information to be concealed and
omitted, and caused and engaged in the fraudulent acts,
practices, and devices set forth above, defendant TRAN knew that
said statements were false, that material information was
concealed and omitted, and that the subject acts, practices, and
devises were fraudulent, unlawful, and deceptive.  In particular,
defendant TRAN knew that Medicare did not pay for CORF services
if a beneficiary's treating physician had not referred the
beneficiary for rehabilitation services.

     14.  In carrying out the fraudulent scheme, defendant TRAN
misrepresented, and caused to be misrepresented, and failed to
disclose, and caused others to fail to disclose, to Medicare the
true facts about his fraudulent business practices regarding the
provision of CORF services at FVHC.  Such misrepresented and
omitted facts were material in that, had Medicare known the true
facts, it would not have paid for the CORF services at FVHC.

/ / /

/ / /

/ / /

D.   Results Of The Fraudulent Scheme

   15.   As a result of the fraudulent scheme, defendant TRAN caused Medicare to reimburse FVHC for hundreds of thousands of dollars for CORF services that were not provided in accordance with Medicare's regulations and rules.

E.   Execution Of The Scheme To Defraud

   16.   On or about the dates set forth below, in Orange County within the Central District of California, and elsewhere, defendant TRAN, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter and to be sent and delivered by the United States Postal Service, according to the directions thereon, to FVHC at 10900 Warner Avenue, Suite

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

101B, Fountain Valley, California 92708, an address within the
Central District of California:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| 1 | 3/28/06 | Check No. 2949467 in the amount of $30,053.53 |
| 2 | 5/3/06 | Check No. 2955392 in the amount of $49,700.71 |
| 3 | 5/11/06 | Check No. 2956750 in the amount of $29,784.07 |
| 4 | 6/13/06 | Check No. 2961376 in the amount of $1,776.11 |
| 5 | 1/4/07 | Check No. 2990119 in the amount of $32,181,84 |
| 6 | 1/9/07 | Check No. 2990730 in the amount of $84,776.09 |
| 7 | 1/10/07 | Check No. 2990904 in the amount of $172,969.52 |
| 8 | 1/12/07 | Check No. 2991309 in the amount of $301,003.88 |
| 9 | 1/14/08 | Check No. 3035023 in the amount of $240,525.02 |

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

LAWRENCE E. KOLE
Assistant United States Attorney
Central District of California